Final case for argument is 14-1266 Alcohol Monitoring Systems v. BI Incorporated Mr. Trembath. Good morning, your honors, and may it please the court. I'd like to start with the 611 patent first, if I could, and the issue in that patent is whether an alert should be read into the message limitation to limit message to a specific type of message. Summary judgment depends upon narrowing the broad message limitation to a specific kind of message, an alert message. As shown in AMS's brief, limiting the claimed message to an alert message was error. Rather than addressing the proper construction of message, BI argues waiver precludes AMS from challenging the district court's sua sponte narrowing of the message limitation. BI, in its brief represented, AMS conjured a new meaning for the word message. That's not true. While message was not the direct subject of claim construction, AMS made its position on message absolutely clear, and BI appeared to acquiesce. I believe their argument about waiver focuses, it seems to me in this case, on claim 7, and the fact that claim 7 wasn't separately argued, and that claim 7, unlike claim 1, doesn't require the same device to do all of the various required functions. Am I correct in saying that there was a waiver with claim 1 as well? Oh, okay. But I agree, claim 7 should be reviewed under a different standard. It should be reviewed under an abusive discretion standard. So is your argument then going to focus on claim 1 for now? Yes. That would be useful. Yes. So in the markment process, message wasn't the direct subject of the argument. BI attempted to conflate message with an alert message. BI proposed that the term at issue was parses raw data, that it should mean the situation analyzer applies a set of rules to the raw data to create two or more messages. In other words, that the situation analyzer takes in the raw data and out pops a message. But I think the problem, even if I agree with you on message, which quite frankly I'm inclined to do, even if I agree with you on that, that doesn't get you over the non-infringement, right? Because you still have to establish, don't you, a situation analyzer that does all these other things using historical data. So even if I agree with your interpretation of message, and if I think the district court's interpretation is too narrow, it doesn't seem to me that that solves all your problems. Okay, so the other basis that the district court relied on, or what the district court said, was that AMS had failed to show the action to be applied portion of the limitation. So message, action to be applied. If we look at claim one, it says situation analyzer looks to workflow instructions and historical data for an action to be applied to each of said plurality of messages. We can look to claim seven here for a little bit of perhaps help in interpreting what's going on. Subset C corresponds to this limitation, and it says determining an action to be applied. BIs, or AMS's position has been that the BI system, when it determines if a message evidences a drinking event, that's the action to be applied. AMS has made its position as clear as possible. This is from 6306. The TAD processor queries, analyzes, and relies upon historical data to determine whether an alert condition exists, rendering summary judgment inappropriate. Determine, or variance of determine, are used at least nine times to describe how the BI TAD processor uses historical data to evaluate the most recently received message to identify drinking events. AMS made it as clear as possible that BI looks to historical data for an action to be applied to the newly received message, determining if the evidence is a drinking event. Well, what did I miss? I thought that what the district court was saying was that the claim requires the situation analyzer to query historical data by the author, but he determined that there is structure, there is an accused, there is a situation analyzer in the BI system, but it doesn't do that. That the query of the historical data took place in different structure in the accused device. That's what I understand Judge Ebel to be saying. Right, and the way the court got there, it was, it construed message to only be alert messages. In the patent, raw data comes in, it gets parsed into messages. Well, I don't think that that's right. I think, I do agree with you that that's how it construed message, but I read his opinion as independently concluding that an action to be applied to said plurality of messages requires the messages to already be in existence. And the action to be applied can't be the creation of the message, it has to be an action taken on the already existing message. And I think that is, maybe I'm not understanding his opinion, but that was what I was trying to get. Alright, so the way I understand the BI system, the message comes in, the BI analyzer, the situation analyzer looks at it and determines whether it evidences a drinking event or not. If it does, it puts it in an event table. If it doesn't, it puts it at stores. That's the action to be applied. The idea that the determination as to whether the incoming message, the incoming raw data, evidences a drinking event or not, is the action that is applied to that message. Did that make sense? If I could encourage the court to look at figure 14 from the 611 patent, it's at A125. Data comes in the communication server from the modem. It's raw data. The situation analyzer parses it. It separates out the TAC data from the rest of the data. And then from the situation analyzer, if it's parsed out to be an alert, it gets sent to the alert manager. Never, ever does an already determined alert go to the situation analyzer. The arrows don't point that way. The only thing that goes into the situation analyzer is raw data and workflow instructions. The same thing happens in the BI system. Raw data comes in to its analyzer. It's parsed out. It's determined through the MAD-6 processor whether there is an alcohol event evidenced or not. And then the data, if it evidences an alcohol event, is flagged to go to a table where it's picked up and sent out. So, explain to me, just so I make sure I understand, under Claim 1, there seem to be two different elements. And as you're explaining to me, I agree that the embodiment disclosed in that figure works exactly the way you explained it, but I'm trying to focus on the claim language of Claim 1. And what I'll call the second element says a situation analyzer connected with a said communication server wherein the situation analyzer parses said raw data through a predetermined set of rules into a plurality of messages. But that is what you're talking about, it seems to me. But that's not the place where the district court found there was no proof of infringement. Where the district court found there was no proof of infringement is the next element, where you have that plurality of messages already. You already have them. And there's an action to be applied to them. In the case of the patent, I understand it's like taking the emails and putting them into precise folders. That's what I don't understand to be present in the accused system, is an action being applied to that already existing message. So tell me what I'm missing. Okay, so the message comes in, it's parsed, so the TAC message is separated out from the rest of the message. Once that happens, the MAD6 algorithm is applied to that message. That's the historical data. It's applied to the message that is already existent because it was parsed. Wait, I feel like you're conflating raw data on the one hand and message on the other. There is a parsing of raw data into a plurality of messages. Right. And so I feel like you still want to use raw data, not messages, in the next element. That's not what the claim says. You've already got to have a message. You've got to take that raw data, put it into a message. Then there's an action that's applied to the message, not an action that's applied to the raw data. There's an action that's applied to the message. And that's the part, I mean I may not understand this well enough, but that's the part I feel like you're mushing together in a way. So if we could look at column... I don't want to look at column anything. I want to look at the claim language. I mean, what am I missing here? The claim language distinguishes between raw data and actions that occur to raw data, and then a created message and then actions that will occur to that message. Tell me how the infringing device does that. Does it create a message? The raw data comes in and when it's parsed, that becomes the message. So raw data comes in, there's temperature, there's tamper, whatever. Those are separated out. That becomes the message. In this next step, the Situation Analyzer grabs workflow instructions. It grabs the MAD6 algorithm, which contains historical data, and it works on that message. So it works on that subset of raw data. The subset of raw data is the message. Yeah, that's what I understand you're saying. Okay, and that is totally supported in column 13. Okay, now you can tell me what's in column 13. Column 13, line 9. Now this, well, as a predicate, this packet talked about separating the raw data into these different units, positive TAC, equipment tampers, and so on. And here at 13.9, it says, Situation Analyzer 124 will make inquiries to Workflow Instruction 128 to get direction on what is the default or specific action that should be applied to the message that was just received. The only message just received is the parsed raw data. That's consistent with the claim construction that the parties agreed upon. The claim construction the parties agreed upon. Data relating to prior messages as opposed to data relating to the message just received. But then it's the Alert Manager that does something with it here, right? Not the Situation Analyzer. Your Honor, there's a fundamental problem. Am I wrong, though, about what I'm reading in this column of this spec? Isn't there a difference between the Alert Manager and the Situation Analyzer? There is a difference. But the fundamental problem in the analysis is that the district court conflated alert message with message. Alert message is a subset of messages. What is parsed is what becomes the initial message that is acted upon. After that message is analyzed, then you know whether you've got an alert message or not. The analysis fell apart at the district court because the district court assumed that a message was only an alert message, which is handled by a different part of the IP. Why don't we hear from the other side? Good morning. Good afternoon, Your Honors. May it please the Court. Timothy Getzoff on behalf of the defendant affiliate EIEC. Judge Moore, you're absolutely right that the plaintiff's argument for infringement depends on conflating raw data with messages. That's improper. It's improper given that... What are messages? The messages are what is generated from the raw data. So the raw data can be alcohol data. It can be other kinds of data that comes in. And the device, and I would cite to the same specification language, that I think explains this pretty well. It's at column 12, it starts at line 50, and then it goes on to column 13, down to about line 45. It's about one column in total, but it explains the raw data comes in, and the system creates messages. The messages can be a positive TAC, which is the transdermal alcohol. It can be an equipment tamper. It can be a communication alert. It can be some sort of maintenance messages. But the messages, as Your Honor correctly noted, are what's created from the raw data. And that in Claim 1 is what the situation analyzer does first. It creates these messages. Next, the device needs to decide what are we going to do with these messages. I've now got a plurality of messages in the system. Some are positive alcohol. Some are something else. And that's where the third element, the separate element, comes in in Claim 1, where the situation analyzer looks to workflow instructions and looks to historical data to say what am I going to do with this message that I've just created. And the same passage in the patent specification describes the kinds of actions. The kinds of actions can be I'm going to report it. I'm going to snooze it if I don't think it's a big deal. I can do other things too. How much of Mr. Trenbath's argument here on the 611 patent in your view was waived? I understood your brief to argue that a measure of some dimension of Mr. Trenbath's 611 argument was waived because it was not presented until the Rule 59 proceeding. That's correct, Your Honor. Essentially, his argument covered a couple of different facets. All of it was waived. Everything Mr. Trenbath argued was waived except for the argument that the MADD 6 algorithm relies on historical data. That narrow piece of the argument was waived. Maybe I was wrong, but I understood Judge Ebel, who essentially heard the gist of Mr. Trenbath's argument to us here today. He heard it on Rule 59. He did. Judge Ebel said, Mr. Trenbath, that's a nice argument. It may well be a winning argument, but it's too late. But it's new and it's waived. That applies to the bulk of what we've talked about today, which is what messages mean. I understand that. What I want to ask you is that if what you're talking about is clean construction and if a sufficient predicate for Mr. Trenbath's point of view had been laid down initially in his clean construction proceeding, the fact that Judge Ebel says, well, you should have told me more summary judgments too late on Rule 59 doesn't necessarily mean it's too late for appellate review here, does it? Normally it would not, but it does in this case for this reason. Because they teed this issue up on Rule 59 and because we now have an order from the district court saying that it was waived, they first procedurally have to overcome that waiver argument by arguing and developing in their opening brief that it was an abuse of discretion by Judge Ebel to not look at the statute. I'm trying to put this in a context. I started by saying if Mr. Trenbath and his counsel had laid down a sufficient predicate during clean construction, if he had said during clean construction, listen here, message means x, x, y, and z. And then Judge Ebel would say, no, I disagree with you on summary judgment. And then he goes on Rule 59 and says, well, I'm repeating my argument from clean construction and Judge Ebel says, too late. I'm not going to hear that. You understand that. But that wouldn't foreclose us from going back to the initial position on clean construction to decide what is correct or not. It does in this particular case because they did not challenge Judge Ebel's waiver order. Now, Judge Ebel's waiver order in the Rule 59 may be wrong. And that was challengeable. And they were eligible to challenge that before this court. But what they needed to do in their opening brief in this case was challenge it. Say he was wrong to foreclose us. The predicate was in the record. We're simply making a different facet on our existing argument. So we're not foreclosed. They blasted ahead in their opening brief making the argument that Your Honor is making as if there wasn't a Rule 59 order saying it's been waived. So that's the second layer of waiver in that in their opening brief, they needed to first challenge the judge's waiver order under the abuse of discretion and say he was wrong to foreclose us. In other words, they would have been. What's the final judgment that we're reviewing here? Is it the decision on his request for redetermination? Or is it the summary judgment? No, it's the summary judgment with one exception in that they did make in their opening brief, they didn't say it was an abuse of discretion. They didn't cite the right standard of review. But they at least acknowledged that there was a Rule 59 order saying that they had waived an argument. And they complained about that. And viewing this somewhat generously, that could be construed as raising it on appeal. And we gave them credit for that in our response brief and said they didn't even make an opening argument on appeal that there was an abuse of discretion on the waiver. That's the two layers of waiver that we have in this case. It's frankly somewhat unusual to have these two layers of waiver. But the only argument that they actually argued with error by Judge Ebel was this issue on Claim 7, the interplay between the method Claim 7, which doesn't have the situation analyzer tethered to the same claim limitation. They did argue that in their opening brief. That particular issue first needs to be reviewed by this court on an abuse of discretion standard. And we're prepared to do that. But this other argument about what messages means, and messages doesn't mean what everyone in the case had thought it means, that was not only new. It was held waived by Judge Ebel. And it wasn't challenged in their opening brief. That's why it was waived a second time. They didn't challenge Judge Ebel's waiver order in their opening brief. They just went right to the merits, as if there wasn't a Rule 59 order. And they can't do that. The reason why I raised this, for the purpose of the argument, so Mr. Trenbeth may have a chance to respond to it, is that as I read his brief on the 611 issue, and as I heard him making his argument here, it didn't strike me that he was totally out of the ballpark. But then I went back and looked, and I realized that your main challenge to Mr. Trenbeth's 611 argument is too late. That's the threshold challenge. Absolutely, Your Honor. In that, as to the messages versus alerts, and that the district court improperly conflated messages with alerts, that is one of the issues they raised for the first time in the Rule 59 motion, which Judge Ebel said was waived. So to address that before Your Honor, they have to argue that was error by Judge Ebel, and they didn't. That's the problem. Was the construction of the term message in dispute prior? It wasn't. And that's it. So why then, when we're talking about claim construction, if there's an issue that's not in dispute, and then the court comes along and provides a very narrow construction of a term, out of the blue, in a manner that surprises them, why don't they have a right at that point to say, time out? Where did this come from? This isn't right. I think there are problems with it. Well, they can do that, if that was the case. The problem for them is, on the record, it wasn't out of the blue. It was the same. The parties stipulated to the definition of historical data at the markment hearing. But not message. No, message was part of the party's stipulation. Message was the definition of historical data. Historical data was defined to mean, stipulated by the parties, data relating to past messages, and not the current message just received. So message was part of the construction. For the first time, on Rule 59. That's historical data, as distinct from the raw data that's coming through. I don't see how, show me in the record, where there was a stipulation that the term message is narrowly limited to only alerts. There was not. And I didn't see that argument being made below in a manner that would have clearly put them on notice that the judge might come along and make such a narrow ruling on the word message. And so under those circumstances, I don't see how there isn't a problem under the Rule 59 decision. They weren't on notice. And you weren't arguing it. And all of a sudden, look, rogue judges, even me, maybe some days, will write something in opinion not realizing I've gone beyond what the parties have argued and said and everything else. And let me address both parts of that. First is whether this was truly out of the blue, because it wasn't. And I would point your honor to our opening brief on summary judgment, which was in the record A5542, where we equate messages with violation messages. And the reason we did that is because A and B. But I agree with you. And so would he. A violation message is a form of message. He would just say it's not the only form of message that's covered. Don't nod your head at me. That's the only evidence. We did that because we cited their own expert report, who equated. He didn't use it as one example of their own expert in his expert report equated message with violation messages. In a particular embodiment or a particular disclosure? I haven't read the expert report. He didn't say, is my guess. I haven't read it. Could be completely wrong. He didn't say, for purposes of claim construction, the term message should be construed as limited to or construed as equated to or should be construed as only covering. No. So what he said is, for purposes of my affirmative opinion on infringement for why BI infringes, messages are the violation messages. He didn't say anything else. And they have the burden of proof here. So he needed to identify, what are you talking about that infringes? The only thing he identified were the violation messages. That was the premise of our summary judgment breach. We took their own expert analysis and said, he only points to violation messages. Fine. Let's go with that. Our opening brief uses those two terms interchangeably. I would point out their response brief, that 6304 and 6306 in the record, they interchange messages, alerts, alert conditions as well. This wasn't a non-issue, your honors. This didn't become an issue until they lost summary judgment. They had to regroup and say, we need to figure something else out. And then they came up with this new argument is, oh, well, messages doesn't mean that the messages described on column 12 of the 611 patent, positive task equipment tamper messages means the raw data coming in. But as your honor pointed out, that conflates two different and discrete topics in the different elements. So that didn't get them anywhere on the merit. But it was also contrary to how they argued it up through their expert reports and summary judgments. So for them to say, this was new and a surprise. It doesn't seem correct for you to say it's contrary to how they argued. Because the word contrary implies the opposite. It seems like you're going too far. And I don't like when lawyers do that. It seems to me your best argument is, they didn't argue this, they argued that. But not that the arguments they made all along are contrary to the arguments they're making. Now, do you see the point I'm trying to get you? It's a fair point. And what I should have said is, it's contrary to how their own expert used it. And they didn't say anything different. You're right. They acquiesced to that understanding of message, which their own expert advanced. We accepted. And we based our summary judgment on it. Their response was based on it, too. There's nothing in the response brief that says, wait a minute. You're conflating messages with alerts. And that's improper. That's not in the response brief either. Again, this message issue was a non-issue. And frankly, it's a non-issue because when you read the specification that one column I cited you to, your honor, it's fairly clear. The messages are what's created from the data. And then the action to be applied is, what do you do with those messages? Do you send it to the parole officer? Do you ignore it? How do you send it? And the patent explains why historical data is important because it has the ability to look at prior messages, prior violations, and say, this is his. But you realize that the claim language simply says, situation analyzer parses. And wouldn't you agree with me, parses means separates or divides? And that's my definition of parses. Parses means, if you give me a bowl of fruit, I'm going to parse it into different kinds of fruit, or I'm going to parse an apple into 10 different slices or something. Parses means divides or separates. So the plain meaning of parses would say, parses raw data through a previous set of terms and rules into a plurality of messages. Apart from the specification, I would read that in a vacuum. The plain meaning to me would actually mean, take raw data, divide it up. Now each of those divisions is a message. That's the plain language of this. Now I agree with you that the specification gives it certainly a very different gloss than that. Right. Do you see what I'm saying? And I would agree that if you read parse, parse can have multiple meanings. Parse is not. Parse doesn't mean create, though. Parse never means create. OK, can you tell me parse? Here, parse this bowl of fruit for me. And suddenly you've got 12 more bananas at the end of it. You didn't create bananas. Parse doesn't mean create new stuff. Parse means divide, separate, categorize. Doesn't it? It can. It can. When does it ever mean create new stuff? In the context of this patent, because that's how they wrote it. When they, when they, now I understand Your Honor's question was divorce. Are you, wait, OK, so now we're just going to talk about the word parse in the abstract. Right. Plain meaning of parse. Are you telling me that a lexicography somewhere in this patent, a different meaning for the word parse than the plain meaning you and I have just agreed on? They weren't that explicit, no. But they were, the implicit is clear from the columns I pointed you to that the parsing is, is Have you ever read any opinion I've ever written on claim construction? How often do you find me implicitly doing things? I was responding to your direct question as to whether they acted as a lexicographer. And you said no. And no, in that, it doesn't say by parse we mean X. But they do say for the situation analyzer for exactly what's being talked about, we divide it, it can be broken down into these categories and then the action is something different. It's like you win or lose all your waiver. Well, I would ask Your Honor to read the column in the patent that breathes life into the claim language that we're talking about and does talk about the creation of messages that are these things received that you now need to consult historical data to decide what to do with them. Thank you, Your Honor. Okay, thank you. Just a little bit of time left. Very brief. As to the waiver issue, I believe Judge Moore in Golden Bridge and the Tenth Circuit in the Barber case that BI has cited found that when there is a Rule 59 motion after a summary judgment, the summary judgment order is reviewed denotable. There is no waiver. As to the waiver on message, BI represented contrary to how argued or something like that. No, they said there was a new argument. The claim construction argument was new. I would ask the court to look at A3566 through 3572. At 3572, BI said, Therefore, to the extent BI equates a similar message with a violation or consumption event, BI's construction is not only unsupported by the claim language and the specification, it is contrary to the science of the invention. AMS's position on the construction of message has been consistent through claim construction and through its opposition to summary judgment. I believe I have nothing further. Thank you. Thank you. I'll confirm the case is submitted and that concludes our proceedings. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you.